UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY J. NEAL,                           Civil Action No.: 17-13403
                                         Honorable David M. Lawson
                    Plaintiff            Magistrate Judge Elizabeth A. Stafford

v.

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 21, 23]

Plaintiff Terry Neal appeals a final decision of defendant

Commissioner of Social Security (Commissioner) denying his application

for disability insurance benefits (DIB) and supplemental security income

(SSI) under the Social Security Act.  Both parties have filed summary

judgment motions, referred to this Court for a report and recommendation

pursuant to 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court

finds that the administrative law judge's (ALJ) decision is supported by

substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 21] be **GRANTED**;

- Neal's motion [ECF No. 23] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Neal's Background and Disability Applications

Born May 27, 1981, Neal was 27 years old at the time of his alleged onset date of August 5, 2008.  [ECF No. 15-2, Tr. 11, 18].  He submitted his applications for benefits in June 2014 and was insured for DIB purposes through March 31, 2010.  [*Id.*, Tr. 11, 13].  Neal had previous work as a mechanic assistant, house builder, and clean up worker.  [*Id.*, Tr. 18].  He claimed to be disabled by left eye injury resulting in loss of vision, post-traumatic stress disorder (PTSD), anxiety, affective disorder, and chronic headaches.  [*Id.*, Tr. 13; ECF No. 15-3, Tr. 68].

After the Commissioner denied his applications initially, Neal requested a hearing, which took place in May 2016, during which he and a vocational expert (VE) testified.  [R. 15-2, Tr. 25-67].  In a September 14, 2016 written decision, the ALJ found Neal to be not disabled.  [*Id.*, Tr. 11-20].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Neal timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

**B.    The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 416.920(a)(4).[1] Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[2] *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c).

relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Neal was not disabled.  At the first step, he found that he had not engaged in substantial gainful activity since his alleged onset date.  [ECF No. 15-2, Tr. 13].  At the second step, the ALJ found that Neal had the severe impairments of "left eye injury with vision loss, anxiety, affective disorder, and PTSD.[3]  [*Id.*].  Next, the ALJ concluded that none of his impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*, Tr. 14-15].

Between the third and fourth steps, the ALJ found that Neal had the

---

[3] The ALJ determined the alleged condition of chronic headaches was not a severe impairment because it did not impose more than minimal functional limitations and that he did not seek significant treatment for it. [ECF No. 15-2, Tr. 13-14].

RFC to perform light work,[4] except that: he could never climb ladders,

ropes or scaffolds; only occasionally stoop; avoid unprotected heights; he

would be limited to occupations requiring only occasional depth perception

due to left eye vision loss and to simple, routine repetitive tasks with only

occasional decision-making. [*Id.*, Tr. 15].  At step four, the ALJ found that

Neal was not capable of performing his past relevant work.  [*Id.*, Tr. 18].  At

the final step, after considering Neal's age, education, work experience,

RFC, and the testimony of the VE, the ALJ determined that there were jobs

that existed in significant numbers that Neal could perform, including

positions as sorter, inspector, and small products assembler.  [*Id.*, Tr. 19].

The ALJ thus concluded Neal was not disabled. [*Id.*, Tr. 20].


## II.   ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining

whether the Commissioner's decision is supported by substantial evidence

and was made in conformity with proper legal standards.  *Gentry v. Comm'r*

*of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is

---

[4]"In order to perform a full range of light work, an individual must be able to lift up to 20 pounds, with frequent lifting or carrying of objects weighing up to 10 pounds. Light work requires standing up to six hours of an eight-hour workday."  Social Security Ruling (SSR) 83-10, 1983 WL 31251 (1983).

"more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Neal argues that the ALJ did not properly evaluate his subjective symptoms, or his chronic headache condition.  He also argues that the ALJ's analysis of his vision impairment is flawed because she rejected all treating, examining and consulting physicians' opinions as to his visual functioning, supplanting them with her lay assessment.  Finally, Neal argues that the ALJ's mental RFC is not supported by the record. The Court finds that the ALJ's decision is supported by substantial evidence and recommends that it be affirmed.

**A.**

Neal contends that the ALJ did not properly evaluate his subjective symptoms; he states that she failed to consider and rejected without explanation Neal's testimony relating to the factors of Social Security Ruling 16-3p.  SSR 16-3p eliminates use of the term "credibility" from

official policy and clarifies that a "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p, 2016 WL 1119029, at *1.  *See also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), *adopted,* 2018 WL 494523 (S.D. Ohio Jan. 22, 2018) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of symptoms, rather than credibility.").

Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight.  *See, e.g., Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018).  Thus, an ALJ's subjective symptom evaluation should not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  At the same time, "such determinations must find support in the record."  *Rogers*, 486 F.3d at 241.

Neal argues that the ALJ did not adequately explain her rejection of his testimony regarding the location, duration, frequency and intensity of the symptoms related to his vision impairment and chronic headaches. [ECF No. 23, PageID.541].  He complains that the ALJ ignored the

7

accommodations he made to his home to alleviate his headaches, and the structuring of his schedule to systematically avoid people. [*Id.*] The ALJ discounted the intensity, persistence and limiting effects of Neal's symptoms based on his reported daily activities. [ECF No. 15-2, Tr. 18]. She found Neal's subjective complaints to be inconsistent with his testimony that he drives a car, wash dishes and grocery shops daily, as well as his reports of caring for his son and pets, preparing meals, sweeping and dusting, mowing the lawn and playing video games. [*Id.*] The ALJ also cited a lack of corroborating complaints of mental health symptoms and Neal's resolved eye pain as being inconsistent with the reported intensity and limiting effects of his symptoms. [*Id.*]

When a claimant's subjective complaints regarding his symptoms, their intensity or their persistence are not supported with by objective evidence, the ALJ is required to consider the entire record. *Rogers*, 486 F.3d at 247. "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support" the reliability of the claimant's allegations, "while inconsistency, although not necessarily defeating, should have the opposite effect." *Id.* at 248. The regulations also direct the ALJ to consider the claimant's daily activities, among other

8

factors, when evaluating symptom-related functional limitation.  20 C.F.R.

§404.1529(c)(3).

An ALJ may discount a claimant's report of subjective symptoms

because "some of [his] activities were inconsistent with his claims of

disabling pain."  *Blacha v. Sec'y of Health and Human Servs.,* 927 F.2d

228, 231 (6th Cir. 1990); *see also Walters v. Comm'r of Soc. Sec.,* 127

F.3d 525, 532 (6th Cir. 1997) (finding that the ALJ acted properly when he

took into account that claimant could "run all of his errands, walk two miles,

prepare all of his meals, and drive three times a week"); *Heston v. Comm'r

of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (the ALJ properly

"considered [the claimant's] testimony concerning fatigue and shortness of

breath in light of other evidence that [she] regularly walks around her yard

for exercise, rides an exercise bicycle, goes to church, goes on vacation,

cooks, vacuums, and makes beds").

Here, the ALJ sufficiently detailed the inconsistency between Neal's

claims of disabling symptoms and his testimony, reports of daily activities

and medical records.  She considered Neal's claims of left eye pain and

blindness, difficulty with concentration and with being in public and found

them to be not entirely consistent with Neal's testimony that he drove a car

and went to the grocery store daily, that he cared for his son and his pets,

and that he prepared meals, did house and yard work, and played video games.  [ECF No. 15-2, Tr. 16, 18].  The ALJ cited other inconsistencies with Neal's complaints, such as repeated reports of resolved left eye pain and lack of corroborating complaints of mental health symptoms, in making her ultimate determination regarding the intensity, persistence and limiting effects of Neal's symptoms. [*Id.*, Tr. 18].  The Court finds no reason to disturb the ALJ's subjective symptom evaluation.

## B.

Neal also argues that the ALJ committed reversible error by rejecting all treating, examining and reviewing doctors' opinions as to Neal's visual functioning,[5] and instead interjecting her own lay assessments of his functioning. [ECF No. 23, PageID.542-44].  It is true that the ALJ gives each medical opinion, including that of treating ophthalmologist Shahzad Mian, M.D., only partial or little weight, [ECF No. 15-2, Tr. 16-17], but this does not constitute reversible error.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by

---

[5] Neal does not challenge the weight assigned to medical opinions on his mental health.  Accordingly, Neal has waived any claim of error related to this issue.

medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence.  *Gentry*, 741 F.3d at 727-29; *Rogers,* 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion.  *Gentry*, 741 F.3d at 723.  In all cases, a treating physician's opinion is entitled to great deference.  *Id.*

But Neal has not developed a treating physician argument because he failed to identify what portions of Dr. Mian's opinion the ALJ failed to credit and how that evidence would alter the ultimate RFC.  It is not the Court's role to develop this argument for him.  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (party cannot leave it to court to put flesh on the bones of an insufficiently developed argument).  And contrary to Neal's suggestion otherwise, the RFC established by the ALJ is consistent with Dr. Mian's opinion on Neal's limited depth perception capabilities, rendering any error in assessing that opinion harmless.  *See Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

The ALJ likewise credited the opinions of consulting examiner Harold

Nims, D.O. (Neal not capable of tasks requiring good depth perception

[ECF No. 15-7, Tr. 283]) and the State Agency reviewer (Neal should never

climb ladders, ropes or scaffolds, limited depth perception [ECF No. 15-3,

Tr. 91-93]) regarding Neal's deficiencies with depth perception due to left

eye blindness. [ECF No. 15-2, Tr. 17].  The ALJ gave little weight to other

portions of the consultants' opinions. [*Id.*]

An ALJ is required to consider every medical opinion of record, 20

C.F.R. § 404.1527, but because Dr. Nims was not a treating physician, the

ALJ was not required to defer to his opinion.  Instead, "in weighing a

consultative examiner's opinion, an Administrative Law Judge must

evaluate the factors listed in 20 C.F.R. § 404.1527(c)." *Williams v. Colvin*,

2016 WL 797594, at *4 (W.D. Ky. Feb. 26, 2016). Those factors are: (1)

length of the treatment relationship and the frequency of examination; (2)

nature and extent of the treatment relationship; (3) supportability of the

opinion; (4) consistency of the opinion with the record as a whole; (5)

specialization of the treating source; and (6) other factors.  §

404.1527(c)(2)-(6).  But there is no rule that requiring an articulation of

each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, 2015 WL 1120316,

at *6 (E.D. Mich. Mar. 11, 2015).

12

The Court finds that the ALJ sufficiently considered Dr. Nims' opinion and the record as a whole, and that substantial evidence supports her determination that Dr. Nims' opinion (aside from the credited opinion relative to depth perception) was entitled to little weight.  With respect to the first two factors regulatory factors, Dr. Nims examined Neal once; they did not have an ongoing treatment relationship.  Concerning the third factor—supportability of the opinion—Dr. Nims opined Neal incapable of work requiring "good vision," but his own examination reflected near normal visual acuity in the right eye.  [ECF No. 15-7, Tr. 281].

The record as a whole, pertinent to the fourth factor, does not evidence restricted vision in the right eye.  Dr. Mian's records reflect normal vision in Neal's right eye, as do the notes of the State Agency examiner. [ECF No. 15-7, Tr. 265, 268, 270; ECF No. 15-3, Tr. 93]. These inconsistencies in the record support the ALJ's determination that Dr. Nims' opinion of overall poor vision was worth little weight.

Further, the ALJ did not err by affording little weight to the opinion (again, with the exception of the credited opinion regarding depth perception) of the State Agency advisor, Sarah Bancroft-Treadway, M.D., who reviewed Neal's medical records. An ALJ is permitted to rely on state agency physician's opinions to the same extent as she may rely on

opinions from other sources.  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App's

267, 274–75 (6th Cir. 2015); 20 C.F.R. § 404.1527.  Much like the visual

acuity opinion of Dr. Nims, Dr. Bancroft-Treadway's opinion that Neal's

right visual acuity was limited was neither internally supportable—her report

notes "no impaired vision in the right eye" [ECF No. 15-3, Tr. 93]—nor

consistent with the record as a whole.  The ALJ's assignment of little weight

to the consultants' opinions (not relating to depth perception) was not error.

## C.

Neal challenges that the RFC does not adequately address either his

headaches or his limitations with concentration, persistence or pace.  As

noted by the ALJ, Neal did not seek significant treatment for headaches,

presenting to his doctor with headache as his chief complaint only once,

but receiving no medication or treatment for it.  [ECF No. 15-2, Tr. 13-14;

ECF No. 15-7, Tr. 320-23].  Neal also notes only taking an over-the-counter

anti-inflammatory pain reliever for his headaches. [ECF No. 15-7, Tr. 363].

He does not provide any medical opinion setting out greater limitations than

those contained in the RFC, nor does he specify what, if any, additional

functional limitations the ALJ should have imposed relative to his

headaches.  *Preslar*, 14 F.3d at 1110 (claimant bears burden of proving

need for a more restrictive RFC).

14

Neal also argues that the ALJ's restriction to simple, routine, repetitive tasks does not adequately accommodate his difficulties maintaining concentration, persistence or pace.  But "[c]ase law in this [c]ircuit does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in concentration, persistence and pace."  *Kepke v. Commr. of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016).  Without more specific restrictions from the plaintiff's doctor, ALJ-imposed limitations to simple, routine, repetitive tasks adequately address moderate limitations in concentrations, persistence and pace.  *Id.* (*distinguishing Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010)); *see also, Bromley v. Comm'r of Soc. Sec.*, 2017 WL 6616728, at *5 (E.D. Mich. Dec. 28, 2017).

Neal does not cite to any record evidence for more specific or restrictive limitations for his difficulties with concentration, persistence and pace.  In fact, the ALJ determined Neal to be more limited regarding his difficulty with concentration, persistence and pace than did consulting examiner John Jeter, M.A., L.L.P., and explicitly endorsed the State Agency consultant's recommendation for simple work.  Neal's psychiatrist, Pawan Garg, M.D., noted that Neal was "limited but satisfactory" in his ability to remember work-like procedures, and understand and remember

very short and simple instructions.  [ECF No. 15-7, Tr. 368].  Neal has not

provided support for a restriction greater than the simple, routine, repetitive

tasks restriction set forth in RFC.

### D.

Finally, Neal argues that the RFC is not supported by substantial

evidence because it ignores his moderate limitations in social functioning.

In reviewing the record evidence, the ALJ determined that Neal had only

mild difficulties in social functioning. [ECF No. 15-2, Tr. 14, 17-18].

In reaching this conclusion, the ALJ accorded little weight to Dr.

Garg's assessment that Neal had no useful ability to interact with the public

or maintain socially appropriate behavior.  [ECF No. 15-7, Tr. 368-69].  The

ALJ found those restrictions excessive in light of Neal's medical records,

his calm and cooperative presentation during treatment, and his consistent

presentation with normal mood and affect. [ECF No. 15-2, Tr. 17-18]. [6]

The ALJ likewise discounted the State Agency reviewer's opinion that Neal

suffered moderate limitations in his social functioning. [*Id.*]  Neal does not

contest the weight accorded to the medical opinions relating to his mental

---

[6] The Commissioner cites to Drs. Garg's and Khan's reports in support of
this assessment, [ECF No. 21, PageID.523-24, citing ECF No. 15-7, Tr.
364, 411], but the Court finds Dr. Garg's notes on the cited page to be
indecipherable.

impairments, but he does argue that the ALJ's mental RFC is not supported by substantial evidence because it ignores evidence related to Neal's impaired social functioning. [ECF No. 23, PageID. 549-551].  Neal bears the burden of proving that he requires a more restrictive RFC. *Preslar*, 14 F.3d at 1110.  He does not meet this burden.

Neal states that objective evidence of his moderate limitation includes a report from his treatment record detailing an appointment with an eye specialist at which he became "very belligerent and verbally abusive," necessitating a call for security. [ECF No. 15-7, Tr. 267].  Neal also points to his testimony about an altercation with his supervisor over a uniform dispute, ending a post-injury work attempt.  [ECF No. 15-2, Tr. 36].  The Court agrees with the Commissioner that these isolated episodes are insufficient to demonstrate an overall moderate limitation in social functioning.  In fact, Neal does not demonstrate that these incidents were determined by a medical professional to be related to a limitation in social functioning; it is not clear that they resulted from a mental health impairment.

Neal also relies on the evidence that his hands were shaking during a field office interview and that he has been treated for anxiety and panic attacks.  [ECF No. 23, PageID.549, citing ECF No. 15-6, Tr. 183; ECF No.

15-7, Tr. 271-72, 335-60, 364].  This evidence does not relate to social

functioning, which pertains to the ability to interact with others.  *Rabbers v.*

*Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 659 (6th Cir. 2009) ("Social

functioning involves a claimant's 'capacity to interact independently,

appropriately, effectively, and on a sustained basis with other individuals.'")

(quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(2)).  And contrary

to Neal's argument otherwise, his self-reports to Don Novak LLP of not

liking to get close to people and of being aggressive do not constitute

objective evidence of limitation or demonstrate that he is moderately

impaired in his ability to interact with others.  [ECF No. 23, PageID.549,

citing ECF No. 15-7, Tr. 271-72, 335-60].

To support the ALJ's determination, the Commissioner cites John

Jeter's November 2014 consultative psychological evaluation in which Neal

was described as being cooperative and as responding well to instructions

and criticism during the mental status examination.  [ECF No. 15-7, Tr.

273-77].  Jeter opined that Neal had fair social skills.  [*Id.*].  Overall, Jeter

concluded that Neal had no restrictions due to mental impairments, but the

ALJ gave that conclusion little weight and found that Neal should be limited

to simple work.  [ECF No. 15-2, Tr. 18].  Still, the ALJ did not refute Jeter's

determination that Neal's social skills were fair and Jeter's description of Neal during the mental health examination supports the ALJ's assessment.

For these reasons, there is substantial evidence to support the ALJ's finding that the record does not substantiate Neal's claim of moderate limitations in his social skills, and Neal has not proven that he requires a more restrictive RFC.

**CONCLUSION**

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 21] be **GRANTED**; that Neal's motion [ECF No. 23] be **DENIED**; and that the ALJ's decision be **AFFIRMED**.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
Dated: December 10, 2018          United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 10, 2018.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager